UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD LYLE STRATTON,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JULIE BUCK, et al.,<br><br>　　　　　　　　Defendants. | No. C09-5571 RJB/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  July 23, 2010** |

Presently before the court is Defendant Dale Brown's motion to dismiss[1] this action for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(c).  Dkt. 25.  Defendant Brown moves to dismiss Plaintiff Donald Lyle Stratton's complaint because he has failed to exhaust his administrative remedies.  *Id.*  Defendant Brown also moves to dismiss Mr. Stratton's complaint for failure to state an Eighth Amendment violation for which relief may be granted under 42 U.S.C. § 1983.  *Id.*  Mr. Stratton filed a response (Dkt. 35) and Defendant Brown filed a reply.  Dkt. 39.[2]

---

[1] The other named defendant, Julie Buck, filed a motion for summary judgment on the claims asserted against her. Dkt. 23.  A separate Report and Recommendation on that motion is pending.  Dkt. 40.

[2] Defendants request that Plaintiff's response to the motion to dismiss (Dkt. 35) be stricken because it was filed on May 13, 2010 instead of May 10, 2010 as ordered.  Dkt. 39 (citing Order granting Motion for Extension at Dkt. 31). The court received Plaintiff's response on May 13, 2010, but the response includes a certificate of mailing signed by Plaintiff on May 3, 2010.  Dkt. 35, p. 10.  Absent proof to the contrary, the court views the response as having been filed on the date Plaintiff signed it.  *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Schroeder v. McDonald*, 55 F.3d 454, 459 (9th Cir.1995) (applying prison mailbox rule to prisoners like plaintiff, who represent themselves in civil rights litigation).

REPORT AND RECOMMENDATION - 1

For the reasons stated below, the court recommends that the motion to dismiss be granted because Mr. Stratton failed to exhaust his administrative remedies.[3] For this reason, Defendant Brown's alternate grounds for dismissal are not reached.

*BACKGROUND*

On August 17, 2008, Mr. Stratton was assaulted by a fellow inmate at the Stafford Creek Corrections Center (SCCC). Dkt. 8, pp. 2-3. Mr. Stratton was taken to segregation for involuntary protective custody after the attack. *Id.*, p. 3. After he was placed in a holding cell, Defendant Brown, a Registered Nurse at SCCC, saw Mr. Stratton lying on the floor and she asked Mr. Stratton, "what hurts, what happened, are you in pain, why were you assaulted . . . ?" *Id.*, p. 3, ¶ 14. Thereafter, he was transported by the Aberdeen Fire Department to the Grays Harbor Community Hospital Emergency Department where he was given two CT scans and returned to SCCC. *Id.*, pp. 3-4.

Mr. Stratton alleges that Defendant Brown violated his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process, because she failed to provide Mr. Stratton with pain medications. *Id.*, p. 4, ¶ 28.

*STANDARD OF REVIEW*

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6), all factual allegations set forth in the complaint are "taken as true." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996). Rule 8(a) (2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in

---

[3] Plaintiff also seeks leave to amend his complaint and to add additional parties. Dkts. 34 and 36. However, neither of these motions need be considered by the court in determining whether Plaintiff has exhausted his administrative remedies. In light of the finding that Plaintiff has failed to exhaust, the undersigned recommends that the motions to amend and for permissive joinder (Dkts. 34 and 36) be denied.

REPORT AND RECOMMENDATION - 2

order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  To survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965.

## *DISCUSSION*

A.      *Exhaustion of Remedies - Standard of Review*

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[4] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e (a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  The important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id*. at 204.

Where there is a prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103.  In *Woodford v. Ngo*, the

---

[4] 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, et seq.

REPORT AND RECOMMENDATION - 3

prisoner filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California prison grievance system. *Id*. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *see also Jensen v. Knowles*, 621 F.Supp.2d 921 (E.D.Cal. 2008). Therefore, the Court will consider Defendants' motion as a motion to dismiss, rather than a motion for summary judgment on the merits. In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Wyatt*, at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). The proper remedy, where a prisoner has failed to exhaust non-judicial remedies, is dismissal of the claim without prejudice. *Wyatt*, 315 F.3d at 1120.

B.   *DOC Grievance Process*

Ron Frederick is the Grievance Program Manager in the Office of Correctional Operations, Washington State Department of Corrections (DOC). Dkt. 25-2, p. 2. According to Mr. Frederick, the Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a Department-wide basis in 1985. *Id.* ¶ 3. Under Washington's OGP, an offender may file a grievance over a wide range of aspects of his/her incarceration. *Id.* ¶ 4. Inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing

REPORT AND RECOMMENDATION - 4

grievances; and 7) physical plant conditions.  An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; 7) disciplinary actions; and 8) several other aspects of incarceration.  *Id.*  The OGP provides a wide range of remedies available to inmates.  *Id.* ¶ 5.  These remedies include: 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.  *Id.*

The grievance procedure consists of four levels of review.  *Id.* ¶ 6.  At Level 0, the complaint or informal level, the offender writes a complaint; the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the offender for additional information, or accepts the complaint and processes it as a formal grievance.  *Id.*  At Level I, the local grievance coordinator responds to the issues raised by the offender.  *Id.*  If the offender is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II.  *Id.*  All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds to the issues.  *Id.*  Inmates may appeal all Level II responses to Department headquarters, where they are re-investigated by administrators.  *Id.*

*C.     Mr. Stratton's Grievances*

On August 21, 2008, Mr. Stratton filed an offender complaint (Grievance Log No. 0820258), stating:

> On 8/17/08 at 2005 hours I was assaulted by another inmate and went to the Emergency Room and Trauma Center due to the assault.  Officers estimated around 50 punches all to the head.  I was not given any type of medication for severe pain in my head and face.  I was never told nor asked if I wanted any type of medications from the incident.  Not even at the hospital.

REPORT AND RECOMMENDATION - 5

> Now I have recovered fully besides a few bruises.  I went 5 days with pain and no medication.

Dkt. 25-2, Attach. 8, p. 8 (CM/ECF pagination).

On August 29, 2008, the grievance coordinator responded, stating that Mr. Stratton complaint was not a grievable issue and that Mr. Stratton could not "grieve outside entities such as G.H. Hospital."  *Id.*

On September 2, 2008, Plaintiff filed another offender complaint essentially rewording the original complaint filed on August 21, 2008.  *Id.*, ¶ 11, Attach. B (Grievance Log No. 0820716).  In this grievance, he stated further that while he was at SCCC, he received no medications from "IMU/SCCC Doctors, or Nurses."  *Id.*  He also requested the names and positions of the staff who provided treatment on August 17, 2008 "in medical."  *Id.*  He was informed that the issue was found not grievable with Grievance Log No. 0820258), that he cannot cite to RCW's or law, and that he should rewrite and re-submit his grievance.  *Id.*

On September 19, 2008, Mr. Stratton sent a letter to the grievance coordinator manager requesting assistance with his grievance.  *Id.*, ¶ 12, Attach. C.  Attached to Mr. Stratton's letter is an offender complaint under which Mr. Stratton has written "GC Misconduct."  In it, Mr. Stratton requests that Grievance Log No. 0820528 should be "re-conduct[ed]" because it was found not grievable after he tried to resubmit it.  *Id.*, p. 13 (CM/ECF pagination).

On October 6, 2008, the Grievance Program Manager, Devon Schrum, responded as follows:

> You may grieve inadequate medical care.  You cannot use third party information such as what the officers think or estimate.  You may rewrite and submit through SCCC Coordinators.

*Id.*, Attach. D.

REPORT AND RECOMMENDATION - 6

Five months later on March 13, 2009, Mr. Stratton filed a rewritten offender complaint. *Id.*, ¶ 13, Attach. E (Grievance Log 0820258). In this complaint, Mr. Stratton grieved "SCCC medical for failure to follow policy and procedure." Dkt. 25-2, Attach. E, p. 18 (CM/ECF pagination).

Mr. Stratton was told that he waited too long to rewrite the grievance:

> Response from HQ was in early Oct. 2008. You have waited 5 months before refilling this. Letter from Ms. Schrum instructed for you to refile & resubmit.

*Id.*, Exh. E, p. 18 (CM-ECF numbering).

Although the Grievance Program Manager did not explicitly outline the timeframe to rewrite, Ronald Frederick states that the OGP in effect at the time Mr. Stratton initiated his complaints states that the grievant "[s]ubmits the new information / rewrite to the grievance coordinator within five (5) working days of having received the original response." Dkt. 25-2, ¶ 14.

Mr. Stratton filed this action on September 8, 2008. Dkt. 1.

On February 19, 2010, Mr. Stratton sent a letter to the Grievance Program Manager asking for another chance to resubmit his complaints and reopen Grievance #0820258. Dkt. 25-2, ¶ 16, Attach. F. Mr. Stratton was informed that he has shown no good cause for waiting five months to send in the rewrite of his initial complaint and reminded that the OGP states that rewrites are to be submitted within five working days. *Id.*, ¶¶ 16-17, Attach. G.

  4.  *Exceptions to Exhaustion*

"If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir.2003). While the Ninth Circuit has acknowledged the possibility of an

REPORT AND RECOMMENDATION - 7

exception to the exhaustion requirement imposed by § 1997e, it has never set forth such an exception. *Id*. at 1120 ("A prisoner's concession to nonexhaustion is a valid ground for dismissal, so long as no exception to exhaustion applies."). District courts within the Ninth Circuit, along with some circuit courts, "have expressly stated that the common-law exceptions to exhaustion do not apply to § 1997e (a) because the text of the statute itself does not provide for any exceptions[.]" *Bovarie v. Giurbino*, 421 F.Supp.2d 1309, 1314 (S.D. Cal. 2006); accord, *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002); *Jackson v. District of Columbia*, 254 F.3d 262 (D.C.Cir.2001). This court declines to infer an exception not recognized either by the plain text of the statute or by any decision of the Ninth Circuit.

The court may look beyond the pleadings to determine whether Plaintiff has exhausted his administrative remedies. *Wyatt*, 315 F.3d at 1119-1120. Defendants have produced documents demonstrating that Mr. Stratton did not complete the three-step grievance process for addressing the complaint now at issue. Mr. Stratton does not dispute that he did not complete the established grievance procedure available at SCCC, but argues that he made a good faith effort to file his grievance properly and "appealed it several times." Dkt. 35, p. 6.

However, the record reflects otherwise. When Mr. Stratton first attempted to grieve his complaint that he was denied medication, his grievance was found non-grievable because it appeared that he was attempting to grieve a private hospital. He was given leave to rewrite. Dkt. 25-2, Attach. A. Within five days, he rewrote the grievance, stating that he was not given medication at SCCC and cited to various state and federal statutes and constitutions. He was again advised that his complaint was not grievable because he could not include legal citations. Dkt. 25-2, Attach. B. Instead of rewriting this grievance, he filed a grievance complaining of grievance coordinator misconduct. Dkt. 25-2, Attach. C. On October 6, 2008, he was advised

REPORT AND RECOMMENDATION - 8

that he could grieve inadequate medical care, and was given permission to rewrite and re-submit his grievance. *Id.*, Attach. D.  He waited over five months to do so.  *Id.*, Attach. E.

In addition, Mr. Stratton filed this lawsuit several months before he again asked that he be allowed to resubmit his complaints and reopen Grievance No. 0820258.  Dkt. 25-2, ¶ 16, Attach. F.   Thus, the facts are undisputed that Mr. Stratton did not complete the grievance process before he filed this lawsuit.

"Section 1997e (a) does not say that exhaustion of administrative is required *before* a case may be decided.  It says, rather, that '[n]o action *shall be brought* with respect to prison conditions ... until such administrative remedies as are available are exhausted.'"  "Congress could have written a statute making exhaustion a precondition to judgment, but it did not.  The actual statute makes exhaustion a precondition to suit."  *McKinney,* 311 F.3d at 1200 (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (italics in original).

There is no evidence that Mr. Stratton could not have availed himself of the grievance process and, in fact, he admits that he did not timely file his grievance.  This is so even if he felt that his efforts were futile.  As noted above, federal courts are not permitted to read futility exceptions into the PLRA exhaustion requirement.  *Booth*, 532 U.S. at 741 n. 6.  If a court concludes that a prisoner has not exhausted administrative remedies, "the proper remedy is dismissal of the claim without prejudice."  *Wyatt*, 315 F.3d at 1120.

Based on the foregoing, the undersigned concludes that Mr. Stratton is not excused from complying with DOC's established grievance procedures.  The evidence reflects that Mr. Stratton has not yet fully exhausted their administrative remedies.  Claims that are not exhausted must be dismissed and this court lacks discretion to resolve those claims on the merits.  See e.g., *McKinney*, 311 F.3d 1198.

REPORT AND RECOMMENDATION - 9

Accordingly, Defendant Brown's Motion to Dismiss (Dkt. 25) should be **granted** and Plaintiff Stratton's claims should be **dismissed without prejudice.** A dismissal without prejudice may permit the Plaintiff to file a new action upon exhaustion of the prison grievance process.

## CONCLUSION

For the reasons stated above the Court should **GRANT** Defendant Brown's motion to dismiss (Dkt. 25) for failure to exhaust and Plaintiff Stratton's claims should be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 23, 2010**, as noted in the caption.

**DATED** this   1st   day of July, 2010.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10