UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD LYLE STRATTON,<br><br>                  Plaintiff,<br><br>  v.<br><br>DALE BROWN,<br><br>                  Defendant. | No. C09-5571 RJB/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  May 10, 2013** |

Before the Court is the Motion to Dismiss of Defendant Dale Brown.  ECF No. 77. Defendant moves to dismiss the Complaint of Plaintiff Donald Lyle Stratton (ECF No. 8) on three grounds:  1) failure to exhaust administrative remedies; 2) failure to state a claim of violation of the Eighth Amendment; and 4) failure to allege the personal participation of Defendant Brown.  ECF No. 77.  Simultaneous with the filing of his motion to dismiss, Defendant Brown served Mr. Stratton with a "*Pro Se* Prisoner Dispositive Motion Notice" consistent with *Woods v. Carey*, 684 F.3d 934, 940-41 (9th Cir. 2012) and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc) (hereinafter *Rand* Notice).  ECF No. 78.  Plaintiff filed a response in opposition (ECF No. 82), and Defendants filed a reply (ECF No. 83).

Having carefully considered the motion and balance of the record, the Court recommends that Defendants' motion be granted.

//

//

REPORT AND RECOMMENDATION - 1

# BACKGROUND

**A.     Plaintiff's Allegations**

On August 17, 2008 at 8:06 p.m., Mr. Stratton was assaulted by a fellow inmate at the Stafford Creek Corrections Center (SCCC).  Mr. Stratton says that he was punched repeatedly in the head and face and kicked in the face and that he almost lost consciousness.  ECF No. 8, pp. 2-3.  Mr. Stratton was escorted to SCCC Medical after the assault where an unidentified DOC employee examined and cleaned his wounds.  Mr. Stratton claims that he had suffered over 50 punches to the head and face, two kicks to the face, loss of circulation in his left ear, a fractured nose, and a very painful migraine.  He told the unknown employee that he was in extreme pain, but she "willfully ignored what [he] said because she said "ok, you're done." *Id.*, p. 3.

Mr. Stratton was then taken to segregation for involuntary protective custody.  *Id.*, p. 3.  Defendant Brown, a Registered Nurse at SCCC, saw Mr. Stratton lying on the floor of his cell and she asked Mr. Stratton, "what hurts, what happened, are you in pain, why were you assaulted . . . ?" *Id.*, p. 3, ¶ 14.  Mr. Stratton stated "my head and face hurt, I was assaulted by another inmate, I am in extreme pain, I don't know why I was beaten up." *Id.*  Approximately one hour after the assault, Mr. Stratton was taken by ambulance to the Grays Harbor Community Hospital Emergency Department, where he was given two CT scans.  *Id.*, ¶¶ 19-22; ECF No. 82-2, p. 1.  On his return to SCCC, Mr. Stratton was returned to SCCC Medical where a second unknown medical employee gave him a bag of ice for the pain and performed "neurochecks" every four hours for the next twelve hours to evaluate his left ear trauma.  *Id.*, ¶¶ 24-26.

Mr. Stratton alleges that Defendant Brown violated his Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment right to due process,

REPORT AND RECOMMENDATION - 2

because she failed to provide Mr. Stratton with "any kind of pain medication to eliminate pain."[1]. *Id.*, p. 4, ¶ 28.

**B.     Procedural Background**

On March 31, 2010, Defendant Brown filed a motion to dismiss.  ECF No. 25.  Mr. Stratton filed a response and sought leave to amend his complaint and for permissive joinder of additional parties.  Plaintiff sought to add new defendants and proposed to allege that he was not offered Tylenol, that he was in pain and that Ms. Brown should have known he was in pain.  ECF No. 34-4, p. 7.  He did not allege that she denied him medication or had the authority to provide him with any medication.  The undersigned recommended denying these motions because neither the motion to amend or motion for joinder were relevant to whether Mr. Stafford had exhausted his administrative remedies.  ECF No. 48, p. 2 n. 3.  The undersigned further recommended that Ms. Brown's motion to dismiss should be granted because Mr. Stafford had not exhausted his administrative remedies.  ECF No. 48.  The District Court agreed.  ECF No. 49.

The Ninth Circuit Court of Appeals reversed and remanded dismissal of Mr. Stratton's claims against Defendant Brown after finding that Mr. Stratton should have been provided with notice at the time Defendant's motion to dismiss was filed "similar to the notice for motions for summary judgment described in *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc) – explaining the requirements for a response to a motion to dismiss for failure to exhaust remedies and the consequences if the district court granted the motion." ECF No. 69, pp. 5-7.   The Ninth Circuit expressed no opinion on the merits and left the issue of whether Mr. Stratton had

---

[1] Plaintiff also sued Dr. Julie Buck, a Grays Harbor Community Hospital Emergency Department doctor.  Plaintiff's claims against Dr. Buck were dismissed with prejudice and the dismissal upheld on appeal.  ECF No. 70.

REPORT AND RECOMMENDATION - 3

exhausted all of his available remedies with the district court to decide in the first instance. *Id.*, p. 10.

Defendant Brown filed his current motion to dismiss on November 28, 2012. ECF No. 77. Attached to Defendant Brown's motion are the declarations of Clara G. Curl, DOC Grievance Program Manager (ECF No. 77-1, pp. 2-5) and Ronald Fredrick, DOC Grievance Program Manager (ECF No. 77-2, pp. 2-6). Attached as exhibits to these declarations are copies of DOC 550.100 Offender Grievance Program Policy (ECF No. 77-1, pp. 7-11); DOC Grievance Program Manual (ECF No. 77-1, pp. 13-56); initial grievance dated August 21, 2008 (Log No. 0820258) (ECF No. 77-2, p. 8); initial grievance dated September 2, 2008 (Log No. 0820716) (ECF No. 77-2, p. 10); letter dated September 19, 2008 from Mr. Stratton to the DOC Grievance Program Manager with an initial grievance of the same date (with no log number) (ECF No. 77-2, pp. 12-13); response from DOC to Mr. Stratton's September 19, 2008 letter (ECF No. 77-2, p. 15); letter dated March 13, 2009 from Mr. Stratton to the SCCC Grievance Coordinator enclosing a grievance dated March 13, 2009 (Log No. 0820258) (ECF No. 77-2, pp. 17-18); letter dated February 19, 2010 from Mr. Stratton to DOC Grievance Program Manager (ECF No. 77-2, p. 20); and response from Grievance Program Manager dated March 3, 2010 (ECF No. 77-2, p. 22).

On the same day that he filed his Motion to Dismiss, Defendant Brown served Plaintiff with a *Rand* Notice. ECF No. 78. The *Rand* Notice informed Mr. Stratton of his right to present counter-affidavits or other responsive evidentiary materials and the effect of losing the motion. *Id.* Mr. Stratton filed a brief in response to the motion to dismiss, an excerpt from the DOC Offender Health Plan, an August 17, 2008 Aberdeen Fire Department Patient Care Report, and

REPORT AND RECOMMENDATION - 4

Case 3:09-cv-05571-RJB   Document 84   Filed 04/23/13   Page 5 of 19

digital photos taken of Mr. Stratton by Corrections Officer Strandberg on August 17, 2008. ECF No. 82-1, 82-2.

**C.     Facts Relating to Grievances/Exhaustion of Remedies**

On August 21, 2008, Mr. Stratton filed an initial grievance, stating:

On 08/17/08 at 2005 hours I was assaulted by another inmate and went to the Emergency Room and Trauma Center due to the assault. Officers estimated around 50 punches all to the head. I was not given any type of medication for the severe pain in my head and face. I was never told nor asked if I wanted any type of medications from the incident. Not even at the hospital.

Now I have recovered fully besides a few bruises. I went 5 days with pain and no medications.

ECF No. 77-2, p. 8 (Grievance Log No. 0820258)

On August 29, 2008, the grievance coordinator responded:

You can not [sic] grieve outside entities such as G.H. Hospital.

ECF No. 77-2, p. 8.

On September 2, 2008, Mr. Stratton filed another initial grievance stating:

On August 17, 2008 I was assaulted by another inmate and went to the hospital for exams. Officers estimated 50 punches, and kicks all to the head and face. While here I received no medications for severe pain, nor IMU/SCCC doctors, or nurses gave me any type of medication. I recovered fully besides bruises. 5 days of pain/no medication. Violates: RCW 41.05.200, 1st 5th, 8th, 14 Amendments/ Wash Const. Article 1 Section 3. RCW 9.92.110.

Please provide me with the names, positions of the medical staff who provided treatment on 8-17-97 (2005 hours), 8-17-08 (2015 hours IMU nurse), 8-18-08 (1st, 2nd, 3rd shift) in medical. This information is governed by RCW 42.56.580.

ECF No. 77-2, p. 10 (Grievance Log No. 0820716).

On September 5, 2008, the grievance coordinator responded:

You can not [sic] site [sic] RCW's or law. This was found not greivable [sic] w/Log ID 0820258.

REPORT AND RECOMMENDATION - 5

*Id.*

On September 19, 2008, Mr. Stratton wrote to the DOC Grievance Program Manager expressing frustration with his attempts to resolve his grievance with SCCC's grievance coordinator. (ECF No. 77-2, pp. 12-13). On October 6, 2008, Grievance Program Manager Devon Schrum stated:

> Mr. Stratton, You may grieve inadequate medical care. You cannot use third party information such as what the officers think or estimate. You may rewrite and submit through SCCC coordinators.

ECF No. 77-2, p. 15.

Five months later, on March 13, 2009, Mr. Stratton wrote the following letter to the SCCC Grievance Coordinator:

> On 08-21-08, I filed a grievance relating to denial of medical treatment. You denied the grievance because you stated I grieved a Hospital. See log ID# 0820258.
>
> On 09-02-08, I filed another grievance relating to medical treatment. You denied the grievance for two reasons: (1) "You can not site RCW's or Law"; (2) "This was found not grievable with log ID# 0820258.["] [sic]
>
> On 10-06-08, I sought a review for log ID #0820258 from GPM Devon Schrum. He sent a copy of this to you. Did he not? Moreover, I gave you ample time to re-file it, but you didn't. So, enclosed is another grievance. Please re-file it. See Devon Schrum's correspondence #4305.

ECF No. 77-2, p. 17.

The grievance enclosed with the foregoing letter stated:

> SCCC medical for failure to follow policy and procedure. On 08-17-08 I was assaulted. I was not given any medications for severe pain. I suffered pain for 5 entire days. You were ordered to re-file this from log ID# 0820258 by GPM Devon Schrum.

ECF No. 77-2, p. 18.

//

REPORT AND RECOMMENDATION - 6

On March 19, 2009, the Grievance Coordinator responded:

> Response from HQ was in early Oct. 2008.  You have waited 5 months before refilling this.  Letter from Ms. Schrum instructed for you to refile & resubmit.

ECF No. 77-2, p. 18.

On September 3, 2009, Mr. Stratton signed his civil rights complaint in this case and filed it, along with a motion to proceed *in forma pauperis,* which were docketed on September 8, 2009.  ECF No. 1.

On February 19, 2010, Mr. Stratton again wrote to the DOC Grievance Program Manager, stating in part:

> Initially on August 17, 2008, I filed a grievance about not being provided any mediations when I was assaulted.  The grievance was dnied [sic] because I allegedly grieved an outside entity, which I was not; I just stated that I never got any medication at the hospital either – it was a plain statement.  See Log #0820258.
>
> Then, on September 2, 2008.  I tried to re-file the grievance, this time curing the deficiencies, however, the grievance was denied because I cited RCW law, and it was found not grievable with Log #0820258; see also Log #0820716.
>
> Then, I sent a letter addressed to the GPM, Mr. Devon Schrum.  The issue was resolved, and I was permitted to re-write and resubmit the grievance through SCCC Grievance Office; See Correspondence #4305.
>
> I sent a grievance to SCCC Grievance Office on or about March 13, 2009, which I attempted to refile the grievance, however, the reply by Mr. Schrum did not specify the time limit, so I waited.  The grievance was denied because I waited 5 months; it should've been processed because there was no set time limit or else I would have promptly mailed it accordingly.
>
> I ask respectfully that I be allowed another chance to resubmit promptly, or at least, SCCC Grievance Coordinatory [sic] reopen Log #0820258 and allows the process to reastart[sic].  I thank you for your assistance in this matter.  I look forward to hearing from you soon.

ECF No. 77-2, p. 20.

//

REPORT AND RECOMMENDATION - 7

On March 3, 2010, Grievance Program Manager Ronald Frederick responded:

> You have provided no reason for waiting 5 months to send your rewrite. OGP states that rewrites should be submitted within 5 working days of receipt of response. It also explains that the entire process should generally take 90 days.

ECF No. 77-2, p. 22.

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980s and was implemented on a department-wide basis in 1985. ECF No. 77-1, Exhibit 1 (Declaration of Clara G. Curl, DOC Grievance Program Manager), p. 3, ¶ 3; Attachment A (DOC Policy 550.100, Offender Grievance Program (OGP)). At the time of entry into the DOC, an offender is provided with information regarding the OGP during the orientation process. *Id.* Attachment B (DOC Orientation-Offender Grievance Procedure). *Id.*

Under the OGP, inmates may file grievances on a wide range of issues relating to their incarceration. For example, inmates may file grievances challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions. ECF No. 77-1, Exhibit 1 (Curl Decl.), p. 3, ¶ 4. Under the OGP, a wide range of remedies are available to inmates. These remedies include: 1) possible restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to

remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure. *Id.*, p. 2, ¶ 5.

The grievance procedure consists of four levels of review:

Level 0 - Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. Routine and emergency complaints accepted as formal grievances begin at

Level I, complaints alleging staff misconduct are initiated at Level II.

Level I - Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at this level.

Level II - Appeal. Inmates may appeal Level I grievances to Level II. Staff conduct grievances are initiated at this level. All appeals and initial grievances received at Level II are investigated and the prison superintendent is the respondent. Emergency grievances can only be appealed to Level II.

Level III - Appeal. Inmates may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are re-investigated. Administrators are the respondents.

ECF No. 77-1, Exhibit 1 (Curl Decl.), pp. 3-4, ¶ 6.

Since March 1, 2005, offenders have 20 working days from the date of an incident to file a grievance. An exception to this filing timeframe is allowed if there is a valid reason for the delay. This timeframe does not apply to complaints against a specific written policy or procedure. The Grievance Coordinators are authorized to waive the normal twenty day filing timeframe in which to submit a complaint if the offender presents documentation of his/her attempts to resolve a conflict through a contractor's review process and allows the coordinator to photocopy the documentation for the grievance record. Offenders have (5)

REPORT AND RECOMMENDATION - 9

working days from the time they receive a response to Level I and II grievances to appeal. An offender cannot appeal a Level III decision. An offender who wants to appeal a response of "non-emergency" to an Emergency Grievance must do so within 24 hours of receiving a response. Also, an inmate must file his grievance at the facility where the concerns arose. He cannot file at another facility because staff does not have jurisdiction over any other facility. The DOC's grievance system is well known to inmates; currently over 20,000 grievances are filed per year system wide. ECF No. 77-1, Exhibit 1 (Curl Decl.), p. 4, ¶ 7.

In the event an offender's initial grievance is deemed to be non-grievable, the grievance process is not considered to be exhausted. The offender can appeal the non-grievability finding to the Grievance Program Manager. The Grievance Program Manager will then make a determination and the offender is provided with the Grievance Program Manager's finding. If the non-grievability finding is upheld, the grievance is considered under the OGP to have been exhausted. ECF No. 77-1, Exhibit 1 (Curl Decl.), p. 3 ¶ 8; Attachment B at p. 33.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may grant a dismissal for failure to state a claim "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395

REPORT AND RECOMMENDATION - 10

U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). Where a plaintiff is proceeding *pro se*, his allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). A motion to dismiss only admits, for the purposes of the motion, all well pleaded facts in the complaint, as distinguished from conclusory allegations. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976); *see also, Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under 42 U.S.C. §1983).

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). However, when considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, the court may look outside the pleadings to determine whether the issue has been exhausted and may decide disputed issues of fact. *Id.* If the court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust, the court must ensure the plaintiff has fair notice of his opportunity to develop a record. *Id.* at 1119-20. To survive a motion to dismiss for failure to exhaust, an inmate's claims must be both exhausted and timely. *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870 (9th Cir. 2011). This Court determines whether an inmate's claim has been fully exhausted by

REPORT AND RECOMMENDATION - 11

referencing the prison's own grievance requirements. *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009).

## DISCUSSION

### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires inmates to exhaust all administrative remedies before bringing a § 1983 claim. 42 U.S.C. § 1997e(a); *Griffin*, 557 F.3d at 1119.  To effectively exhaust his administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Id*.  Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id.* at 1120.  If an inmate fails to adequately exhaust his administrative remedies on a claim, that claim must be dismissed pursuant to an unenumerated Fed. R. Civ. P. 12(b) motion. *Wyatt*, 315 F.3d at 1119-20.  When considering whether to dismiss a complaint for failure to exhaust administrative remedies, the court may look outside the pleadings to determine whether the issue has been exhausted and may decide disputed issues of fact. *Id.*

Mr. Stratton's first grievance was rejected on the grounds that he was not allowed to grieve entities outside of the facility, such as a hospital. ECF No. 77-2, p. 8. Mr. Stratton argues that this grievance should not have been denied because SCCC has a contract with the Grays Harbor Community Hospital and therefore, Dr. Buck was under DOC jurisdiction as "contract staff." ECF No. 82, p. 4. The OGP states that an offender may grieve the actions of "employees, contract staff, or volunteers over whom the facility or supervising office has jurisdiction,…." ECF No. 82, p. 4 (citing ECF No. 77-1, p. 9 (OGP Policy).  Mr. Stratton attaches an excerpt

REPORT AND RECOMMENDATION - 12

from the DOC Offender Health Plan, revised on April 8, 2011, reflecting that the Grays Harbor Community Hospital is a contract provider of the DOC. ECF No. 82-1, p. 1.

As noted above, Plaintiff's claims against Dr. Buck, who was an independent contractor and not employed by the hospital or state, have been resolved and that resolution has been upheld on appeal. *See* ECF No. 70. Moreover, Mr. Stratton maintained throughout the grievance process that he never intended to grieve an outside entity. Rather, he was just stating that he "never got any medication at the hospital either – it was a plain statement." ECF No. 77-2, p. 20; *see also* ECF No. 77-2, p. 13 ("I did not grieve the hospital that I was sent to, I just added the facts.").

Mr. Stratton further argues that because SCCC "improperly screened" his first grievance, there were no further available remedies for him to exhaust. ECF No. 82, p. 4. This is incorrect. Following rejection of his first grievance, Mr. Stratton submitted a second initial grievance and after that one was rejected, he appealed and was given an opportunity to rewrite and resubmit his grievance regarding complaints of inadequate medical care. Therefore, he had further available remedies to exhaust. Had he simply rewritten and resubmitted his grievance as instructed, his complaints could have been investigated. It was not until five months later that Mr. Stratton submitted the rewrite. In his letter to the SCCC grievance coordinator at that time, however, he stated that the coordinator had failed to re-file his grievance:

> Moreover, I gave you ample time to re-file it, but you didn't. So, enclosed is another grievance. Please re-file it. See Devon Schrum's correspondence #4305.

ECF No. 77-2, p. 17.

After the rewrite was rejected because he had waited too long to rewrite it, Mr. Stratton filed this lawsuit. ECF No. 1. Then, five months *after filing this lawsuit*, Mr. Stratton again

REPORT AND RECOMMENDATION - 13

wrote to the DOC Grievance Program Manager asking for a chance to resubmit his complaints and reopen Grievance Log No. 0820258. ECF No. 77-2, p. 20.

There is some evidence that Mr. Stratton was under the mistaken impression that the SCCC grievance coordinator was supposed to have re-filed his grievance. This "re-file" was apparently to have been his second initial grievance (Log No. 0820258), as it was originally written on October 6, 2008. It is unclear why Mr. Stratton would have complained to the SCCC grievance coordinator for failing to re-file his grievance when he had been told that he could rewrite the grievance and "submit through SCCC coordinators." ECF No. 77-2, p. 15. It is also unclear why Mr. Stratton waited five months to submit his rewrite or to follow-up with the status of any such re-filing.

Despite the foregoing, it is clear that Mr. Stratton filed this lawsuit before the grievance process was complete because six months after he filed his federal lawsuit, he attempted to have his grievance "reopened." Exhaustion of administrative remedies is required before a case may be filed, not before a case is decided:

> Section 1997e (a) does not say that exhaustion of administrative remedies is required before a case may be decided. It says, rather, that "*[n]o action shall be brought* with respect to prison conditions ... *until* such administrative remedies as are available are exhausted." [The prisoner] violated § 1997e(a) by filing his action. Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit.*

*McKinney,* 311 F.3d at 1200 (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (italics in original).

Thus Mr. Stratton's claims against Defendant Brown should be dismissed without prejudice for failure to exhaust his administrative remedies. Alternatively, they may be dismissed with prejudice, for failure to state a claim.

REPORT AND RECOMMENDATION - 14

**B.    Eighth Amendment – Denial of Medical Care**

To state a claim under 42 U.S.C. §1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); Flores v. Pierce, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. §1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In order to state a civil rights claim, a plaintiff must set forth the specific factual basis upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant cannot be held liable under 42 U.S.C. §1983 solely on the basis of supervisory responsibility or position. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged. *Id*. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Mr. Stratton alleges that his Eighth Amendment rights were violated when he was denied pain medication for injuries he suffered after he was attacked by another SCCC offender. ECF No. 8.

REPORT AND RECOMMENDATION - 15

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner medical treatment. *Id* at 104-05. To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970 (1994). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35, 113 S.Ct. 2475 (1993); *McGuckin*, 974 F.2d at 1059. Second the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim requires that the deprivation must be "sufficiently serious." *Farmer*, 511 U.S. at 833. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective component relates to the defendant's state of mind, and requires deliberate indifference. *Farmer*, 511 U.S. at 833. To withstand summary dismissal, a prisoner must not only allege he was subjected to unconstitutional conditions, he must allege facts sufficient to indicate that the officials were deliberately indifferent to his complaints. *Id.*

REPORT AND RECOMMENDATION - 16

A prison official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 835. In order to prevail on a claim of deliberate indifference, the plaintiff must prove that the prison official was (1) actually aware of facts from which an inference could be drawn that a substantial risk of harm exists; and (2) that the official actually drew the inference; but (3) nevertheless disregarded the risk to the inmate's health. *Farmer*, 511 U.S. at 837-38.

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Further, mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir. 1980).

Mr. Stratton alleges that his Eighth Amendment rights were violated when he was denied pain medication after suffering injuries from an attack he received by another offender at SCCC. ECF No. 8. He does not allege, however, how Defendant Brown violated his Eighth Amendment rights. According to the complaint, Defendant Brown's sole involvement with Mr. Stratton occurred after Mr. Stratton was taken to segregation and then it was to ask Mr. Stratton "What hurts, what happened, are you in pain, why were you assaulted . . .?" and Plaintiff responded, "my head and face hurt, I was assaulted by another inmate, I am in extreme pain, I don't know why I was beaten up." ECF No. 8, p. 3, ¶ 14. Plaintiff claims that before he was taken to segregation, he was seen in the medical clinic by an unidentified medical care employee who ignored his requests for medicine. When he returned to SCCC after being examined at the hospital, Mr. Stratton claims that an unidentified medical care employee gave him ice for the pain and performed checks every four hours to evaluate the trauma to his left ear. *Id.*, ¶ 26. He

REPORT AND RECOMMENDATION - 17

does not, however, allege that he ever asked Defendant Brown for pain medication or that Defendant Brown had the knowledge or clinical authority to give him pain medication. According to Mr. Stratton, the only interaction between himself and Defendant Brown was the above noted conversation. He was then apparently taken to the emergency room for diagnostic scans.

Based on the foregoing allegations, Mr. Stratton has failed to state a claim against Defendant Brown under 28 U.S.C. § 1983. Moreover, he has failed to allege how Defendant Brown participated in any violation of his constitutional rights. He alleges merely that she inquired into his well being. See *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978) (to be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation.)

The Court notes that in May of 2010, when Mr. Stafford moved to amend his complaint, he alleged there that it was Defendant Brown who attended him immediately after the assault and that another nurse was the one who spoke to him when he was in the F-Unit segregation cell. There, he alleged that Defendant Brown provided him with first aid treatment, "but that no pain medication or Tylenol was ever given to Mr. Stratton." ECF No. 34-4, pp. 3-4. He makes no such allegations in his response to the instant motion to dismiss. Instead, he merely argues that Nurse Brown "sat idly as Stratton was in severe pain." ECF No. 82, p. 6. Even assuming the truth of these allegations, Mr. Stafford has not alleged facts from which it could be inferred that Defendant Brown deliberately disregarded a serious risk to his health.

REPORT AND RECOMMENDATION - 18

Mr. Stafford's complaint contains no allegations concerning Defendant Brown's conduct that could be construed as a constitutional violation.  Therefore, the undersigned recommends that his claims against Defendant Brown should be dismissed.

## CONCLUSION

The undersigned recommends that Defendants' motion to dismiss (ECF No. 83) be **Granted** and Plaintiff's claims against Defendant Brown be **dismissed without prejudice** for failure to exhaust or, alternatively, **dismissed with prejudice** for failure to state a claim.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 10, 2013**, as noted in the caption.

**DATED** this  23rd  day of April, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19